IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **MARK FREEMAN, III** | § | |
| | § | |
| **V.** | § | **No.  5:05CV209** |
| | § | |
| **RED RIVER COUNTY, TEXAS, ET AL.** | § | |

<u>**ORDER**</u>

Before the Court is Defendants Red River County, Texas, Sheriff Jerry Conway, Chief Deputy Larry Spangler, Deputy Larry Ponder, and County Attorney Val Varley's Motion for Summary Judgment (Dkt. No. 46). The Court, having reviewed the relevant briefing, is of the opinion that Defendants' motion for summary judgment should be **GRANTED**.

**I.**

**BACKGROUND**

Mark Freeman ("Plaintiff" or "Freeman"), a cattleman from Oklahoma negotiated the purchase of 303 cows from Defendant L. J. Stowe on November 19, 2003. Plaintiff had arranged to sell forty-four of the cows to a third party.  The sale was not completed, causing Plaintiff to stop payment on the $215,080 check he had written to Stowe, claiming the cows were not what they were purported to be. Ultimately, Stowe filed a criminal charge against Freeman, which was investigated as a "theft of > $200,000."

Plaintiff filed this case pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343, alleging he was threatened with arrest by Defendants Sheriff Jerry Conway, Chief Deputy Larry Spangler, Deputy Larry Ponder, and County Attorney Val Varley.  Plaintiff contends the threat was made to help Defendant L. J. Stowe and his father, Defendant Luther Stowe, collect the money owed them for the

cattle, being a civil debt.  Specifically, Plaintiff claims the alleged unlawful issuance of a warrant of arrest; alleged threatening criminal action on a civil debt; and alleged threat of arrest and confinement give rise to a number of causes of actions against the Red River County Defendants. These include violations of Plaintiff's Fourth, Fifth, Sixth, and Eighth Amendment rights; tortious interference with contract; invasion of privacy (false light); intentional infliction of emotional distress; malicious prosecution; and civil conspiracy.  Plaintiff is seeking actual and punitive damages.

Defendants Red River County, Texas, Sheriff Conway, Chief Deputy Spangler, Deputy Ponder, and County Attorney Varley contend a criminal complaint was filed, an independent determination of probable cause was made by a magistrate judge, and Plaintiff made restitution. Defendants assert they did not violate Plaintiff's constitutional rights, and they are entitled to qualified immunity.

## II.

### DEFENDANTS' MOTION

#### A.    Defendants' Arguments

On December 6, 2006, Defendants filed the current motion for summary judgment.  Plaintiff filed his response on February 21, 2007.[1]  Defendants assert all of Plaintiff's claims are barred as a matter of law.  First, Defendants contend Plaintiff's state law and Fourth Amendment claim of

---

[1] The motion was referred to the Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges.  However, the Magistrate Judge mediated this case, and at the mediation, she informed the parties that she would not rule on any dispositive motions. The parties did not enter into a settlement agreement, leaving the motion ripe for consideration by the undersigned.

malicious prosecution is barred by the one-year statute of limitation. Second, Defendants assert the malicious prosecution claim fails on the merits because Plaintiff cannot establish that any of the Defendants acted without probable cause, that any Defendant acted with malice, or that Plaintiff was innocent of theft.   Third, Defendants state any claim for unlawful arrest under the Fourth Amendment will be unsuccessful because Freeman admits he was never arrested. For the same reason, Defendants asserts Plaintiff's claim under the Eighth Amendment will fail because he was never convicted.  Fourth, Defendants maintain Plaintiff's Sixth Amendment claim does not give rise to a civil cause of action. Fifth, Defendants argue Plaintiff fails to establish a cause of action under the Fifth Amendment.

With regard to his claims against the County, Defendants assert Plaintiff fails to establish that any alleged deprivation of a constitutional right was caused by a practice, policy or custom that was enacted with objective deliberate indifference. With regard to Plaintiff's federal claims against the individuals (assuming they are sued in their individual capacities), Defendants assert they are entitled to qualified immunity.  Specifically, Defendants assert Defendant Varley is entitled to absolute immunity because the complained of actions arose out of his role as the County's Criminal Prosecuting Attorney.

Finally, Defendants contend Plaintiff's state law causes of action should also be dismissed as a matter of law. Specifically, Defendants assert there is no waiver of sovereign immunity for intentional torts against Red River County or the individual Defendants sued in their official capacities. Defendants further assert Texas does not recognize a claim for invasion of privacy (false light), and Plaintiff's claim of intentional infliction of emotional distress is a "gap filler" and is based on the same allegations Plaintiff made in his other claims. Even if a claim for intentional infliction

3

of emotional distress was available, Defendants state Plaintiff fails to establish that any Red River County Defendants' actions were extreme and outrageous or that they acted intentionally or recklessly. Next, Defendants assert Plaintiff admits there is no breach of contract claim against the Red River County Defendants. Defendants further assert Plaintiff fails to establish intentional interference with Plaintiff's contract with Stowe because the contract was already allegedly breached when Defendants were first contacted, and there is no evidence the elements of the claim were all met. In addition, Defendants assert Plaintiff fails to establish all of the elements of civil conspiracy claim as a matter of law. With regard to the state law claims against the individual defendants in their individual capacity (if any), those defendants contend they are entitled to official immunity because they were performing discretionary duties within the scope of their authority and they each acted in good faith.

### B.    Plaintiff's Response

Plaintiff, after reviewing the evidence in this case, abandoned his claims brought under 42 U.S.C. § 1983 for constitutional violations of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, except to the extent argued in his response; his breach of contract claim against all Defendants except L.J. Stowe and Luther Stowe; his claim of tortious interference; his claim of invasion of privacy; his claim of intentional infliction of emotional distress; his claim of malicious prosecution; and his claims for punitive damages against the County. According to Plaintiff, the only claims remaining against Red River County, Sheriff Jerry Conway, Chief Deputy Larry Spangler, Deputy Larry Ponder, and County Attorney Val Varley are those based upon Varley's actions for which he is not immune, Ponder's actions for which there is no qualified immunity, and the civil conspiracy claim alleged against Conway, Spangler, Ponder, Varley and L. J. Stowe.

4

### III.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits and other evidence available to the Court establish that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(C). The movant bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992), *cert. denied,* 113 S.Ct. 82 (1992).

In a usual case, the nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial.  *Ashe v. Corley,* 992 F.2d 540 (5th Cir.1993).  Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  It is not enough for the party opposing summary judgment to rest on mere conclusory allegations or denials in his pleadings.  *Topalian,* 954 F.2d at 1131.  The nonmovant must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case.  *Dunn v. State Farm & Casualty Co.,* 927 F.2d 869, 872 (5th Cir.1991).  If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265

(1986).  In assessing the proof, the court views the evidence in the light most favorable to the nonmovant.  *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV.

### DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

Defendants attached the following to their motion for summary judgment: (1) Affidavit of (former) Sheriff Jerry Conway ("Exhibit 1"); (2) Affidavit of Chief Deputy Larry Spangler ("Exhibit 2"); (3) Affidavit of Larry Ponder ("Exhibit 3"); (4) Affidavit of District Attorney Val Varley ("Exhibit 4"); (5) Excerpts from Deposition of Mark Freeman ("Exhibit 5"); (6) Excerpts from Deposition of Sgt. John Bradshaw ("Exhibit 6"); (7) Excerpts from Deposition of Jerry Neal Conway ("Exhibit 7"); (8) Excerpts from Deposition of Val Varley ("Exhibit 8"); (9) Excerpts from Deposition of Larry Ponder ("Exhibit 9"); (10) Excerpts from Deposition of L.J. Stowe on May 19, 2004 ("Exhibit 10"); (11) Excerpts from Deposition of L.J. Stowe on September 21, 2006 ("Exhibit 11"); (12) Excerpts from Deposition of Aaron Perkins ("Exhibit 12"); (13) Documents signed by Stowe and Freeman regarding 11/19/03 purchase of cows ("Exhibit 13"); (14) Check dated 11/19/03 in the amount of $215,000.00 ("Exhibit 14"); (15) DeKalb Animal Hospital/Dr. Baird memo re pregnancy checks ("Exhibit 15"); (16) Invoice from DeKalb Animal Hospital re pregnancy checks ("Exhibit 16"); (17) Stop Payment Request dated 11/21/03 at 8:18a.m. ("Exhibit 17"); (18) Victim Statement given by Stowe to Sheriff's Office dated 11/24/03 ("Exhibit 18"); (19) Offense Report dated 11/25/03 for Theft over $200,000 ("Exhibit 19"); (20) Outgoing Wire Transfer ("Exhibit 20"); (21) Ponder notes (RRC 0015-16)("Exhibit 21"); (22) Sgt. Bradshaw's report ("Exhibit 22"); (23) Probable Cause Affidavit dated December 8, 2003 ("Exhibit 23"); (24) Complaint Signed by Judge

Lewis dated December 8, 2003 ("Exhibit 24"); (25) Warrant of Arrest signed by Judge Lewis dated December 8 , 2003 ("Exhibit 25"); (26) December 17, 2003 letter from Varley to Lesher confirming that charge of Theft over $200,000 will not be filed against Freeman ("Exhibit 26"); (27) Affidavit of Non-Prosecution ("Exhibit 27"); (28) Freeman Tape Recording of his conversation with Bradshaw (as transcribed by Lesher's office)("Exhibit 28"); (29) Excerpts from Red River County's Sheriff Office Manual ("Exhibit 29"); and (30) Expert Report/Affidavit of Van Zandt County Sheriff Pat Burnett ("Exhibit 30"). A review of Defendants' summary judgment evidence reveals the following.

Plaintiff Mark Freeman, a cattleman from Oklahoma, and Defendant L. J. Stowe negotiated the purchase of 303 cows on November 19, 2003. (Exhibit 1 at pg. 1; Exhibit 2 at pg. 1; Exhibit 3 at pg. 1; Exhibit 5 at pgs. 19-28, 39, 42-44; Exhibits 13-14). The cows were represented to be four to six years of age and five to eight months bred. (Exhibit 5 at pgs. 19-28, 39, 42-44; Exhibits 10-11; Exhibits 13-14). A couple of days before the cows were purchased, Freeman, along with Donald Vaught and Wayne Meeks, went to the Stowe Ranch where the cattle was located. (Exhibit 5 at pg. 18-21). Freeman has been in the cattle business for approximately fifty years, and buys and/or sells approximately 3,000-4,000 cows a year. (Exhibit 5 at pgs. 12, 50). He inspected the cows for about four or five hours and determined they would be acceptable for his purpose. (Exhibit 5 at pg. 104). Stowe provided Freeman verification that the cows had been pregnancy checked by DeKalb Animal Hospital. (Exhibit 5; Exhibits 15-16).

On November 19, 2003, Freeman, along with Vaught, returned to load the cows into the trucks that he had arranged. (Exhibit 5 at pgs. 24-28; Exhibit 10 at pgs. 58-60; Exhibit 11). Freeman was present during the loading, except when he had to use his cell phone. (Exhibit 5 at pgs. 24-25; Exhibit 10 at pgs. 58-60; Exhibit 11). Vaught, to whom Freeman paid a commission, was there

when the cows were loaded when Freeman was not. (Exhibit 5 at pg. 25).  Freeman was allowed to

cull some cows out if he did not want them. (Exhibit 5 at pgs. 25-28; Exhibit 19).  Freeman loaded

the cows, both parties executed the sale document, and then Freeman wrote the check to Stowe in

the amount of $215,080. (Exhibit 5 at pgs. 18-28; Exhibits 10-11; Exhibits 13-14).

Freeman already had a contract to deliver 44 head of cattle to Leon McCoin, a man in Afton,

Oklahoma. (Exhibit 5 at pgs. 18-28).  Forty-four of the 303 cows that Freeman purchased were

loaded into a truck and taken directly to McCoin. (Exhibit 5 at pgs. 18-28).  The remaining 259 cows

were taken to Gilham, Arkansas. McCoin had not seen the cows prior to their delivery. When the

cows arrived, Mr. McCoin complained that the cows were not what they were purported to be and

cancelled the purchase with Freeman.  (Exhibit 5 at pgs. 18-28).  On November 21, 2003 at 8:18

a.m., Freeman stopped payment on the check to Stowe. (Exhibit 17).

On or about November 24, 2003, L. J. Stowe went to the Red River County Sheriff's

Department and filed a criminal complaint. (Exhibit 1 at pg. 2; Exhibit 2 at pg. 2; Exhibit 3 at pg.

2; Exhibit 6 at pgs. 8-21; Exhibits 18-19). Two years before, Stowes' father, Luther Stowe, had

stopped payment on a check in a similar situation, and the Red River County Sheriff's Office had

informed the Stowes that such conduct could subject them to criminal prosecution. (Exhibit 2 at pg.

2; Exhibit 10 at pgs. 29-35, 78-79).  The parties in the previous situation had worked out their

differences and criminal charges were never pressed against the Stowes. (Exhibit 2 at pg. 2; Exhibit

10 at pgs. 29-35, 78-79).  In the present case, Stowe did not give any money or anything of value to

anyone at Red River County to investigate or prosecute his criminal complaint. (Exhibit 1 at pg. 2;

Exhibit 2 at pg. 2; Exhibit 3 at pg. 2; Exhibit 4 at pg.2; Exhibit 5 at pg. 151; Exhibit 11 at pg. 46).

The investigation was assigned to Deputy Larry Ponder. (Exhibit 1 at pg. 2; Exhibit 2 at pg.

3; Exhibit 3 at pg. 2; Exhibit 4 at pg. 2; Exhibit 6 at pgs. 8-21; Exhibit 19.  It was investigated as an

offense of "Theft > $200,000." (Exhibit 1 ay pg. 2; Exhibit 2 at pg. 3; Exhibit 3 at pg. 2; Exhibit 4

at pg. 2; Exhibit 6 at pgs. 8-21).  Deputy Ponder contacted Freeman by telephone, and Freeman

stated that "he was not satisfied with some of the cattle and would not pay for what Stowe wanted

for them." (Exhibit 3 at pg. 2; Exhibit 19).

 As it had done in the past on crimes dealing with livestock, the Red River County Sheriff's

Department contacted the Special Texas Ranger (commissioned through DPS to handle crimes

involving livestock) working for the Texas Cattleman's Association to assist in the criminal

investigation. (Exhibit 1 at pg. 2; Exhibit 2 at pg. 2; Exhibit 3 at pg. 2; Exhibit 4 at pg. 3; Exhibits

19 & 22). On or about December 3, 2003, Deputy Larry Ponder contacted Ranger Bradshaw of the

Texas Special Rangers and advised of a theft of over 300 head of cattle.  (Exhibit 3 at pg. 2; Exhibit

9; Exhibits 19 & 22).  Ponder advised that L. J. Stowe had sold Mark Freeman over 300 head of

cattle, and that after he received the cattle, Freeman stopped payment on the check for a little over

$215,000.00. (Exhibit 3 at pg. 2; Exhibit 6 at pgs. 18-21; Exhibit 9 at pg. 2; Exhibits 19 & 22).

Special Texas Ranger Bradshaw listed the crime as theft of livestock. (Exhibit 22).

 Subsequently, Freeman contacted Special Texas Ranger Bradshaw. (Exhibit 22).  Freeman

advised Ranger Bradshaw that his veterinarian had informed Plaintiff that around forty percent of

the cattle were nine to ten years old and were not bred at all.  (Exhibit 22).  Ranger Bradshaw

advised Freeman that he needed to pay for the cattle and then if he wanted, he could sue Mr. Stowe.

(Exhibit 22).  Mr. Freeman said that his attorney had told him not to pay anything for the cattle until

he received what he paid for. (Exhibit 22).  Ranger Bradshaw advised County Attorney Varley of

the situation, and Varley said he would prefer if the situation could be worked out between Freeman

and Stowe (Exhibit 22).

The matter was always considered a criminal matter.  (Exhibit 1 at pg. 2; Exhibit 2 at pg. 2; Exhibit 3 at pg. 2; Exhibit 4 at pg. 3; Exhibit 6 at pgs. 47-48, 91-94, 97-98; Exhibits 7-9; Exhibits 19 & 22-26).  Special Texas Ranger Bradshaw always considered it a criminal matter. (Exhibit 6 at pgs. 47-48, 91-94, 97-98; Exhibit 22).  Ranger Bradshaw testified that there was probable cause for the issuance of the arrest warrant, and a warrant could have been issued without ever making any efforts to try and resolve the matter. (Exhibit 6 at pg. 97, lines 14-23).

Taking more than $200,000 worth of cattle (especially into two different states), stopping payment on the check and not returning the cattle can be considered the crime of theft over $200,000. (Exhibit 1 at pg. 2; Exhibit 2 at pgs. 2-3; Exhibit 3 at pg. 2; Exhibit 4 at pg. 3; Exhibit 6 at pgs. 47-48, 91-94, 97-98; Exhibits 7-9; Exhibits 19 & 30).   The fact that a criminal case may also have civil implications does not mean that the criminal aspect of the matter cannot be pursued according to Conway, Spangler, Ponder, and Varley. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pg. 2; Exhibit 4 at pg. 3; Exhibits 7-9; Exhibits 19 & 30).  District Attorney Val Varley always considered it a criminal matter. (Exhibit 4 at pgs. 2-3; Exhibits 8 & 26-27).  Sheriff Conway always considered it a criminal matter. (Exhibit 1 at pgs. 2-3; Exhibit 7).  Chief Deputy Spangler always considered it a criminal matter, and Deputy Ponder always considered it a criminal matter.  (Exhibit 2 at pgs. 2-3; Exhibit 3 at pg. 2; Exhibits 9 & 19).

Special Ranger Bradshaw contacted his supervisor, who informed him that Freeman had three options to avoid criminal investigation and prosecution: 1) make the check good; 2) return the cattle; 3) pay for the undisputed portion of the cattle and return the disputed portion of the cattle. (Exhibit 6 at pgs. 12-13, 91-98).  None of those options were chosen.  (Exhibit 3 at pg. 3; Exhibit

6 at pgs. 8-21, 91-98).

For approximately two weeks, the Special Texas Ranger and Red River County Deputy Larry Ponder attempted to work it out with the parties but to no avail. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pg. 3; Exhibits 6-7 & 9). Stowe wanted his money, and Freeman refused to return the cows at his own expense. (Exhibit 3 at pg. 3; Exhibit 5 at pgs. 114-16; Exhibit 6 at pgs. 91-98; Exhibits 9 & 11). Freeman never offered to bring the cattle back to Texas. (Exhibit 5 at pgs. 114-16; Exhibit 6 at pgs. 8-21, 91-98; Exhibit 9; Exhibit 12 at pgs. 45-46). Freeman chose to keep the cattle after stopping payment on the cattle rather than spend less than $2,000 to send the cattle back. (Exhibit 5 at pg. 116).

Ponder spoke with Freeman and told him he either had to bring the cows back or pay the money – he could not keep the cows without paying for them. (Exhibit 3 at pg. 3). Ponder never threatened criminal prosecution to collect a civil debt. (Exhibit 3 at pg. 3). Ponder always investigated this as a criminal claim, and he simply informed Plaintiff of the options. (Exhibit 3 at pg. 3). During his investigation, Ponder was told that there were insufficient funds in the account to cover the check, even if Freeman had not stopped payment. (Exhibit 3 at pg. 3; Exhibits 9 & 21). Apparently, Freeman testified that he had a line of credit in place to cover the debt, but Ponder knew nothing about that line of credit. (Exhibit 3 at pg. 3). At one point Freeman tried to wire $151,000 to Mr. Stowe for the cows, but Mr. Stowe refused to accept payment. (Exhibit 3 at pg. 3; Exhibits 5-6; Exhibit 20).

When the situation was determined to be unresolvable between the parties, Stowe insisted on going forward with the criminal charges. (Exhibit 3 at pg. 3; Exhibits 6-7; Exhibit 8 at pgs. 56-58; Exhibits 9 & 11 at pgs. 46-53). Special Texas Ranger Bradshaw then contacted Freeman to advise

him that Stowe would not agree to anything other than full payment. (Exhibit 3 at pg. 3; Exhibits 5-6; Exhibit 22).   Special Texas Ranger Bradshaw then advised Freeman that the Red River Co. Sheriff's Department was going to issue a warrant for his arrest. (Exhibit 3 at pg. 3, Exhibits 5-6; Exhibit 22).  Freeman tape recorded the conversation. (Exhibit 5; Exhibit 28).

Freeman never spoke with Val Varley. (Exhibit 4 at pgs. 2-3; Exhibit 5 at pgs. 68-69; Exhibit 8).  Freeman never spoke with Sheriff Conway. (Exhibit 1 at pgs. 2-3; Exhibit 5 at pg. 74; Exhibit 7).  Freeman never spoke with Chief Deputy Larry Spangler. (Exhibit 2 at pg. 3; Exhibit 5 at pg. 79). According to Freeman, he only spoke with Deputy Larry Ponder on one occasion. (Exhibit 5 at pgs. 70-73).  Freeman testified that Deputy Ponder was not malicious or mean to him, and Ponder acted professionally toward him. (Exhibit 5 at pgs. 70-71; Exhibit 6).

When he learned that a warrant was being issued, Freeman paid the full amount.  (Exhibit 5 at pgs. 70-71; Exhibit 6).  He never intended to turn himself in. (Exhibit 5 at pgs. 63-64).  On December 8, 2006, Ponder presented a probable cause affidavit to Judge Lewis. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pgs. 3-4; Exhibit 4 at pg. 3; Exhibits 9 & 23).  Ponder signed a complaint against Freeman for "P.C. 31.06 Presumption for Theft by Check" (a)(2)(b)(1)(2)(3)(1) F/1 >200,000.00", which was executed by Judge Lewis. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pgs. 3-4; Exhibit 4 at pg. 3; Exhibits 9 & 23-24).  A warrant for Freeman's arrest was signed by Judge Lewis. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pgs. 3-4; Exhibit 4 at pg. 3; Exhibits 9 & 23-24). This warrant was never executed on Freeman. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pgs. 3-4; Exhibit 4 at pg. 3; Exhibit 5 at pg. 8; Exhibits 9 & 23-24). Freeman was never arrested. (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pg. 4; Exhibit 4 at pg. 3; Exhibit 5 at pg. 8).  The warrant was never returned to the Sheriff's Office for service, nor was it

ever placed in NCIC or TCIS (the electronic data system that communicates arrest and warrant information to other law enforcement agencies). (Exhibit 1 at pg. 3; Exhibit 2 at pg. 3; Exhibit 3 at pg. 4).

Freeman had an acquaintance named Aaron Perkins go to the Sheriff's Department to see what he could find out. (Exhibit 5; Exhibit 12 at pgs. 43-44).  According to Freeman, Perkins contacted him first because Perkins had learned of a warrant for his arrest. (Exhibit 5 at pgs. 88-90). According to Perkins, Freeman contacted him to go down to the Sheriff's Office to find out what was going on. (Exhibit 12 at pgs. 43-44).  According to Freeman's testimony, Perkins told him the Sheriff had made comments about him not being released from jail until he paid the entire amount of the check. (Exhibit 5 at pgs. 88-90). However, Perkins testified that Sheriff Conway and he never spoke about the details of this matter, and Sheriff Conway never made the statement that Mr. Freeman claims.  (Exhibit 1 at pg. 3; Exhibit 12 at pgs. 20-23).

Perkins testified that Chief Spangler and/or Deputy Ponder said something to the effect that bond would be set at their discretion and said something that gave him the impression that Freeman was not going to get out of jail until the check was paid.  (Exhibit 12 at pgs. 51-56).  Perkins testified that he told Freeman he thought he should pay the check. (Exhibit 12 at pgs. 51-56).  Perkins joked with Freeman that he would have to pay the check before he could bond out, but Freeman did not think it was funny. (Exhibit 12 at pgs. 51-56). Perkins admitted that the Sheriff Deputy could have been joking around, like he was with Freeman. (Exhibit 12 at pgs. 51-56). Perkins also testified that the comment was so stupid he did not believe it. (Exhibit 12 at pg. 67).  Chief Deputy Spangler and Deputy Ponder deny telling Perkins that Freeman would not be released without paying the full amount of the check, even in a joking manner. (Exhibit 2 at pgs. 3-4; Exhibit 3 at pg. 4).  In fact,

only a magistrate can set bond in a criminal case like this one, a fact that neither Perkins nor Freeman were aware.  (Exhibit 1 at pg. 3; Exhibit 2 at pgs. 3-4; Exhibit 3 at pg. 4; Exhibit 6; Exhibit 12).

On December 17, 2003 Val Varley, at Mark Lesher's request, sent a letter to him confirming that he would not be prosecuting the charge of Theft over $200,000. (Exhibit 1 at pg. 4; Exhibit 2 at pgs. 3-4; Exhibit 3 at pg. 4; Exhibit 5; Exhibit 26).  Mr. Stowe signed an Affidavit of Non-Prosecution on December 17, 2006. (Exhibit 1 at pg. 4; Exhibit 2 at pg. 4; Exhibit 3 at pg. 4; Exhibit 4 at pg. 3; Exhibit 8; Exhibit 27).

The Red River County Sheriff's Office has a written policy that "no employee shall direct any malicious prosecution against any person." (Exhibit 1 at pg. 4; Exhibit 2 at pg. 4; Exhibit 3 at pg. 4; Exhibit 29).  The Sheriff's Office also has a policy against assistance in civil matters. "No employee of the Department shall render aid or assistance in civil cases, except officers to prevent an immediate breach of the peace or to quell a disturbance actually existing. This rule is not intended to prevent officers from informing any citizen as to the steps necessary to institute a civil lawsuit." (Exhibit 1 at pg. 4; Exhibit 2 at pg. 4; Exhibit 3 at pgs. 4-5; Exhibit 29).  It also states that "no employee shall take part or be concerned, directly or indirectly, in making or negotiating any compromise or other arrangement between a person charged with, or suspected of, a criminal offense and the person who has suffered by his or her act; nor shall he or she seek to obtain any continuance or dismissal of any case in court out of friendship for the defendant." (Exhibit 1 at pg. 4; Exhibit 2 at pg. 4; Exhibit 3 at pgs. 4-5; Exhibit 29).

Mr. Stowe admitted that the Sheriff's Department was not thrilled with having the arrest warrant issued, but Mr. Stowe was insistent on filing the charge and having a magistrate consider the issuance of an arrest warrant. (Exhibit 10 at pgs. 80-81).  After reviewing this case, Sheriff Pat

14

Burnett of Van Zandt County, Defendants' expert witness, is of the opinion that the Red River County Sheriff's Office, the Sheriff, the Chief Deputy and the other deputy involved in this matter did not violate the constitutional or statutory rights of the Plaintiff.  (Exhibit 30 at pg. 1).  He based that opinion on almost thirty years of law enforcement experience and his own experience in owning cattle and/or livestock for most of his life (Exhibit 30 at pg. 1).

According to Burnett, the theft was investigated as a theft over $200,000, and the fact that the warrant noted "presumption of theft by check" instead of "theft by check" does not make any difference.  (Exhibit 30 at pg. 1).  The warrant was executed by the judge, but Burnett's understanding is that the warrant never left the judge's office because the Plaintiff paid restitution.  (Exhibit 30 at pg. 1).  Mr. Freeman admitted he was never arrested. (Exhibit 30 at pg. 1).

Burnett is of the opinion that in the cattle business, once you show up when picking up cattle, cull the cows and tender a check (in this case for more than $200,000), you cannot stop payment on the check without creating a presumption of theft (by check).  (Exhibit 30 at pgs. 1-2).  This type of situation would be investigated as a theft over $200,000. (Exhibit 30 at pg. 2).  "In the cattle industry, if you show up, cull the cows, tender a check and take the cows away, they are your cows." (Exhibit 30 at pg. 2).

Based on the evidence presented to the Sheriff's Office and the surrounding facts and circumstances, Burnett opined "there was certainly nothing wrong with presenting the supporting affidavit to a magistrate for a determination of whether probable cause existed to issue a warrant. The [m]agistrate signed the warrant, so obviously the magistrate found that probable cause existed in this case." (Exhibit 25; Exhibit 30 at pg. 2).  According to Burnett, there was "absolutely nothing wrong with letting someone in this situation know that, if they do not make the check good or return

15

the cows, then they can be subject to arrest. In fact, that happens all the time in the law enforcement profession." (Exhibit 30 at pg. 2). Burnett stated that in a theft situation, especially a theft situation involving a 'stop payment' check, "if the situation can be resolved through restitution without having to make an arrest, then law enforcement will usually allow the restitution and forego the arrest." (Exhibit 30 at pg. 2). Burnett concluded that Sheriff Conway, Chief Deputy Spangler and Deputy Ponder were all performing discretionary duties, in good faith within the course and scope of their duties, and they did not violate any constitutional or statutory rights of which a reasonable law enforcement officer would have known. (Exhibit 30 at pg. 2).

Defendants' evidence further establishes that Freeman admitted as follows: (1) Freeman admits that he was not arrested in the matter and was never put in jail. (Exhibit 5 at pg. 8); (2) Freeman admits that he was not convicted of any crime in this matter, nor has he been convicted of any crime in the last ten years. (Exhibit 5 at pg. 8); (3) Freeman admits that he has no law enforcement training. (Exhibit 5 at pg. 11); (4) Freeman admits that he was present when the cows were loaded and allowed to cull cows out. (Exhibit 5 at pgs. 24, 31, 37); (5) Freeman admits that the invoice was signed and he wrote the check after the cows were loaded. (Exhibit 5 at pgs. 44-45); (6) Freeman admits that he never spoke with the County Judge of Red River County. (Exhibit 5 at pg. 58); (7) Freeman admits that he never spoke with Val Varley, the County/Criminal Attorney of Red River County. (Exhibit 5 at pgs. 68-69); (8) Freeman admits that he never spoke with Sheriff Conway, the former sheriff of Red River County. (Exhibit 5 at pg. 74); (9) Freeman admits that he never spoke with Chief Deputy Larry Spangler of Red River County. (Exhibit 5 at pg. 79); (10) Freeman admits that he never indicated that he would turn himself in. (Exhibit 5 at pgs.63-64 & 77); (11) Freeman admits that he only remembers one conversation with Deputy Ponder, in which he was

16

told that they had a warrant for his arrest. (Exhibit 5 at pg. 64); (12) Freeman admits that Ponder did

not tell him what was going to happen with the warrant or give him any options to get it resolved.

(Exhibit at pg. 64); (13) Freeman admits that he became aware on or about December 17, 2003 that

he was not going to be prosecuted for Theft over $200,000 in this matter. (Exhibit 5 at pgs. 67-68);

(14) Freeman admits that his lawsuit was filed on November 18, 2005, which is more than one year

from the date the prosecution ended. (Exhibit 5 at pg. 68); (15) Freeman admits that he does not

know why he is suing Val Varley. (Exhibit 5 at pg. 69); (16) Freeman admits that he was never

denied appointment of counsel. (Exhibit 5 at pg. 69); (17) Freeman admits that the Red River County

Defendants never interfered with him hiring Mark Lesher. (Exhibit 5 at pg. 70); (18)Freeman admits

that he his suing Deputy Ponder because he told him they had a warrant for his arrest – other than

that he does not know what else Ponder did wrong. (Exhibit 5 at pg. 70); (19) Freeman admits that

Ponder did not act maliciously toward him, he was not mean to him, and Ponder acted

professionally. (Exhibit 5 at pg. 71); (20)  Freeman admits that he has no information that Deputy

Ponder withheld any information from Judge Lewis when he executed the arrest warrant. (Exhibit

5 at pg. 72); (21) Freeman admits that he does not know who initiated the criminal prosecution

against him. (Exhibit 5 at pg. 72); (22) Freeman admits that the contract with the Stowes was

completed prior to Red River County's being called in to investigate. (Exhibit 5 at pg. 73); (23)

Freeman admits that he has no information that any Red River County Defendant willfully or

intentional interfered with his contract with Stowe. (Exhibit 5 at pg. 73); (24) Freeman admits that

he has no evidence that Red River County Defendants took any active part in getting Stowe to

allegedly provide him inferior cows.  (Exhibit 5 at pg. 73); (25) Freeman admits that he does not

know one way or another whether Deputy Ponder's action in this case were unlawful. (Exhibit 5 at

pg. 73); (26) Freeman admits that he has no information that Val Varley acted outside his scope of his role as the County/District Attorney in this matter. (Exhibit 5 at pg. 79); (27) Freeman admits that he has no information that Sheriff Conway acted outside his scope of his role as the Sheriff in this matter. (Exhibit 5 at pg. 79); (28)  Freeman admits that he does not know why he is suing Deputy Spangler in this matter. (Exhibit 5 at pg. 80); (29)  Freeman admits that he does not know whether he is suing Sheriff Conway, District Attorney Varley or Chief Deputy Spangler in their individual or official capacities, or both. (Exhibit 5 at pg. 80); (30) Freeman admits that his attorney told him that stopping payment on the check was a criminal matter. (Exhibit 5 at pg. 86); (31) Freeman admits that he was never told by any Red River County Defendant that once he was arrested that he would not be released until he had paid the full amount of the check and posted bail. (Exhibit 5 at pg. 86); and (32)  Freeman admits that he chose to keep the cattle and stop payment rather than spend less that $2,000 to send the cattle back. (Exhibit 5 at pg. 116).

## VI.

## PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

Plaintiff relies on the following summary judgment evidence: (1) Affidavit of John Mercy ("Mercy Aff."); (2) Excerpts from deposition of Mark Freeman ("Freeman Depo."); (3) Excerpts from deposition of L. J. Stowe ("Stowe Depo."); (4) Excerpts from deposition of John Bradshaw ("Bradshaw Depo."); (5) Excerpts from deposition of Larry Ponder ("Ponder Depo."); (6) Excerpts from deposition of Val Varley ("Varley Depo."); (7) Excerpts from deposition of Raymond Burnett, Jr. ("Burnett Depo."); and (8) Excerpts from deposition of Larry Spangler ("Spangler Depo."). Plaintiff's evidence establishes the following.

At the time Freeman was loading the cows he commented several times to Stowe that the

cows looked older than represented. (Freeman Depo. pgs. 31, 32). Stowe assured him they had been checked by a veterinarian and he had the papers. (Freeman Depo. pgs. 31, 32). After McCoin tested the cows delivered to him and determined they were not as represented Freeman reimbursed McCoin the entire amount of his purchase ($31,000.00). (Freeman Depo. pg. 36). It was only after the veterinarian checked McCoin's cows and found them not to be conforming that Freeman stopped payment on the check to Stowe. (Freeman Depo. pg. 37). At that point Freeman called Stowe and told him that the cows did not comply. (Freeman Depo. pg. 46).

Numerous times Freeman told Stowe that he would pay to have Stowe's veterinarian come and watch the cows checked to see if they were conforming. (Freeman Depo. pgs. 46-47, 117; Stowe Depo. pg. 17). Bradshaw even reported to Varley that Freeman had made this offer. (Bradshaw Depo. pg. 18). Stowe refused. (Freeman Depo. pgs. 46-47). Additionally, numerous times Freeman told Stowe that he could pick up the cattle. (Freeman Depo. pgs. 60, 135; Ponder Depo. pg. 22; Bradshaw Depo. pg. 40; Spangler Depo. pg. 21).

Varley had previously represented Stowe as his lawyer in a prior cattle transaction. (Stowe Depo. pgs. 11, 30). Varley wrote a letter for him concerning someone who had sold him cattle that were not conforming. (Varley Depo. pg. 58; Stowe Depo. pg. 30). Stowe paid him to write the letter. (Stowe Depo. pg. 30). When Stowe received the $151,000.00 payment from Freeman he talked to Varley about it. (Stowe Depo. pg. 18; Varley Depo. pgs. 69, 82-83). Varley gave him advice about the partial payment and required notice. (Stowe Depo. pgs. 18, 22, 26; Varley depo. pgs. 69, 82-83).

At the time of the initial $210,000.00 payment, there were sufficient funds to cover Freeman's check. (Freeman Depo. pgs. 49, 160-161). Ponder does not remember checking with Freeman's bank. (Ponder Depo. pg. 41). Ponder discussed with Varley what to charge Freeman with.

(Ponder Depo. pgs. 16, 34).   Varley denies that Ponder consulted with him. (Varley Depo. pgs. 55, 82). Ponder charged Freeman with exactly what Varley said to charge Freeman with. (Ponder Depo. pgs. 28, 39, 44; Burnett Depo. pg. 43). Varley testified the probable cause affidavit sworn to by Ponder was inaccurate. (Varley Depo. pgs. 37, 43).

"Presumption of theft by check" is not a violation of the Penal Code. (Varley Depo. pg. 14; Burnett Depo. pgs.32-33). Varley testified it could possibly be a violation of someone's constitutional rights to issue a warrant on something that was not a criminal violation. (Varley Depo. pg. 15). Ponder testified that if the probable cause affidavit was wrong, it was because of Varley's advice. (Ponder Depo. pg. 35). After the warrant was issued, it was returned to the Sheriff's Department. (Spangler Depo. pg. 24).

Varley testified that based upon what he heard concerning this case he could not charge Freeman with a crime. (Varley Depo. pg. 18). Varley also testified that there was possibly official oppression if a threat was made to Freeman based upon the warrant in this case and the threat was made only for purposes of collecting a civil debt. (Varley Depo. pgs. 21-22). Such a threat would possibly be a constitutional violation. (Varley Depo. pgs. 25-26). Varley admitted that the affidavit was incorrect. (Varley Depo. pgs. 37, 43). Varley further admitted that it was legal under the Uniform Commercial Code to stop payment on a check. (Varley Depo. pg. 26). *See* Tex. Bus. & Comm. Code § 2.608.  Bradshaw told Freeman that it should be a civil matter. (Freeman Depo. pg. 85).

The parties were all in agreement on what to do. (Ponder Depo. pgs. 42-43). The goal from the beginning was to get Stowe's money back. (Stowe Depo. pg. 29). Ponder told Stowe that he would help him get his money; Stowe got his money, and the reason that Stowe went to the Sheriff's

office was so he could get paid. (Stowe Depo. pgs. 18-19). Stowe further testified that he thinks Varley was trying to get his money back for him. (Stowe Depo. pg. 20). All parties were in agreement: Stowe, Varley, the Sheriff, Spangler, and Ponder. (Ponder Depo. pgs. 42-43, 50). Ponder told Freeman if he did not pay Stowe or bring the cows back he would be arrested. (Ponder Depo. pg. 28).

Defendants' expert, Pat Burnett, did not give any opinions with regard to Varley. (Burnett Depo. pg. 68). Burnett testified a person should not be threatened with charges that did not constitute a crime. (Burnett Depo. pg. 36). Burnett further opined that there was no obligation for Freeman to return the cattle. (Burnett Depo. pg. 51). Burnett testified that it would be improper to charge Freeman with a crime before the investigation was complete or when there was no probable cause for presumption of theft by check. (Burnett Depo. pgs. 52-53). He further opined that the officers made a mistake. (Burnett Depo. pg. 53).

Burnett further testified that a reasonable officer would not charge someone nor would a reasonable district attorney advise an officer to charge someone with theft by check under the circumstances in this case. (Burnett Depo. pg. 116). However, Burnett stated a reasonable officer, after talking to the district attorney, could easily make a mistake and list presumption of theft by check on a complaint (Burnett Depo. pg. 117).  Later, Burnett testified that a reasonable officer should have recognized that there was a mistake on the probable cause affidavit. (Burnett Depo. pg. 123).

## VII.

## APPLICABLE LAW

Section 1983 provides that any person who, under color of state law, deprives another of "any

rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. To state a claim under § 1983, Plaintiffs must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffal v. Dallas Ind. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994).

Governmental officials are immune from civil rights claims brought under 42 U.S.C. § 1983 if "their conduct does not violate clearly established rights of which a reasonable party would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In determining whether a public official is entitled to qualified immunity, the first step in the two-step analysis is to determine whether the official's conduct violated a right recognized under constitutional law, and whether that right was clearly established at the time of the official's conduct. *Jones v. Collins*, 132 F.3d 1048 (5th Cir.1998); *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

If the court determines that the official's conduct violated a constitutional right that was clearly established at the time of the conduct, the court must then decide whether the official's conduct was objectively reasonable in light of the law at the time of the conduct in question. *Vera*, 73 F.3d at 607. "In other words, if a reasonable official would know that his actions were in violation of the plaintiff's constitutional rights, it would lead to a conclusion that the conduct was not objectively reasonable." *Id.*

## VIII.

## DISCUSSION

A.    **Freeman's claims**

Freeman filed his Original Complaint on November 19, 2005. In that complaint, he alleged claims against Defendants Red River County, Texas, former Sheriff Jerry Conway, Chief Deputy Larry Ponder, County/District Attorney Val Varley, L. J. Stowe and Luther Stowe. Freeman claims the alleged unlawful issuance of a warrant of arrest; alleged threatening criminal action on a civil debt; and alleged threat of arrest and confinement give rise to a number of causes of actions against the Red River County Defendants.  These include violations of Plaintiff's Fourth, Fifth, Sixth, and Eighth Amendment rights; tortious interference with contract; invasion of privacy (false light); intentional infliction of emotional distress; malicious prosecution; and civil conspiracy. The complaint does not outline Freeman's claims as to each defendant and does not establish whether Freeman is bringing his claims against individual Red River County Defendants in their official or individual capacities, or both. Plaintiff's breach of contact claim is against the Stowes and not against the Red River County Defendants.

According to Freeman's response to Defendants' motion, the only remaining claims before this Court are as follows: (1) Breach of Contract against Defendants L.J. Stowe and Luther Stowe; (2) unidentified constitutional law claims – "to the extent argued" – against Defendant Val Varley and Defendant Larry Ponder; and (3) civil conspiracy claims against Sheriff Conway, Chief Deputy Spangler, Deputy Ponder, District Attorney Val Varley and L. J. Stowe.  Plaintiff argues that Defendant Varley and Defendant Ponder are not entitled to absolute immunity or qualified immunity.

**B.      Discussion on Plaintiff's claims again Varley and Ponder**

**1.      Whether Plaintiff has established a constitutional violation**

Defendants' motion for summary judgment detailed the various constitutional claims Plaintiff could make and sets out why Defendant contends each constitutional claim failed.  In his response, Plaintiff "abandon[ed] his claims brought under 42 U.S.C. § 1983 for constitutional violations of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, except to the extent argued" in Plaintiff's response.  Defendant asserts Plaintiff fails to establish that Plaintiff has suffered any actionable constitutional violation, which is the first step in defeating the motion for summary judgment.

Two allegations are required in order to state a cause of action under 42 U.S.C. § 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635 (1980); *Manax v. Mcnamara,* 842 F.2d 808 (5th Cir.1988). Section 1983, however, does not grant a cause of action for every action taken by a state official.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, the Court is not convinced Plaintiff has created a genuine issue of material fact on the first element, deprivation of a federal right.  Plaintiff has abandoned his constitutional law claims "except to the extent argued" in his response.  While Plaintiff argues that the warrant and probable cause affidavit had errors by charging Plaintiff with presumption of theft by check before the investigation was completed, Plaintiff has not demonstrated what violation of his constitutional right(s) the errors caused.   Plaintiff asserts the constitutional right that Freeman was deprived of was to be free from deprivation of his property by unlawful means or without proper due process. The property that he was deprived of was $215,080.00 that he had a right under the Uniform Commercial

24

Code to withhold from Stowe after rejecting the cattle as non-conforming.  However, Plaintiff presents no evidence demonstrating this rises to the level of a violation of Plaintiff's constitutional rights.

The Court cannot say whatever constitutional claims remain, after Plaintiff's response, resulted from Defendants' depriving Plaintiff of rights secured under the United States Constitution. Not every alleged tort or wrong constitutes a violation of a civil right. *Albright v. Oliver,* 510 U.S. 266, 269-71 (1994); *Baker v. McCollan*, 443 U.S. 137, 142 (1979).  Also, a person is not entitled to an error free investigation.  *See Baker*, 443 U.S. at 146; *Sanchez v. Swyden*, 139 F.3d 464, 468 (5th Cir. 1998).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his claim." In this case, Plaintiff does not identify any evidence that supports any deprivation of a recognized constitutional right. This finding warrants granting Defendants' motion.  Still, the Court will assume *arguendo* that Plaintiff has established a constitutional violation and will consider whether District Attorney Varley and Deputy Ponder are entitled to immunity.

**2.      Whether Varley is entitled to immunity**

Plaintiff argues Varley does not assert qualified immunity.  Plaintiff further argues it is clear that Varley is not entitled to immunity because his actions were not prosecutorial but were outside those functions associated with judicial prosecution, namely giving advice to Stowe on how to proceed on a civil matter, advising Ponder on what to charge Freeman, and helping to collect a civil debt.

A prosecuting attorney who acted within the scope of his duties in initiating and pursuing a

criminal prosecution is not amenable to suit under 42 U.S.C. §1983. *See Kalina v. Fletcher*, 522 U.S. 118 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001)(wherein the prosecutor was granted summary judgment because he was absolutely immune). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991)(stating "prosecutors are absolutely immune from liability under § 1983 for their conduct 'in initiating a prosecution and in presenting the State's case,' because that conduct is 'intimately associated with the judicial phase of the criminal process.'")(*quoting Imbler*, 424 U.S. at 430-31). Moreover, there is "widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries." *Burnes v. Reed* 500 U.S. 478, 490 n.6 (1991).

In the instant case, the acts Plaintiff complains of all involve activities that Varley engaged in within the course and scope of his duties as the County/District Attorney. Importantly, the Fifth Circuit has held that absolute immunity "shelters prosecutors even when they act 'maliciously, wantonly, or negligently.'" *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987), *quoting Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985). Defendants have presented competent summary judgment evidence demonstrating the absence of a genuine issue of material fact regarding Varley's conduct. Because Varley is entitled to absolute immunity, the Court agrees with Defendants that summary judgment should be granted and Plaintiff's claims against Varley should be dismissed.

3.      **Whether Ponder is entitled to immunity**

Regarding Ponder, Plaintiff first asserts Varley admitted that the probable cause affidavit

sworn to by Ponder and subsequent warrant did not allege a violation of a crime. (Varley Depo. pg.

14).  However, Ponder charged Freeman with violations of the Penal Code as advised by Varley.

(Ponder Depo. pgs. 28, 39, 41; Burnett Depo. pg. 43). Varley admitted that there was no probable

cause shown in the affidavit. (Varley Depo. pg. 37). According to Varley, the probable cause

affidavit was "incorrect." (Varley Depo. pg. 43). According to Freeman, Ponder told him that

he would be arrested under the warrant and should pay or he would go to jail. (Freeman Depo. pgs.

70, 81-82). According to Defendants' expert, Burnett, it is improper for a deputy to threaten criminal

prosecution to collect a civil debt, but Burnett did not view the facts of this case to involve collection

of a civil debt. (Burnett Depo. pgs. 52, 73-74).

Plaintiff contends Ponder's conduct was not objectively reasonable.  Specifically, Plaintiff

contends Burnett's deposition testimony shows that a reasonable sheriff's officer would not have

charged Freeman based upon the facts in this case. (Burnett Depo. pgs. 52, 53, 123). Plaintiff further

asserts Varley testified he could not come up with probable cause from the face of the affidavit.

(Varley Depo. pgs. 40-41).[2]   Varley also testified that if someone were threatened with criminal

prosecution to collect a civil debt, that would possibly be a constitutional violation. (Varley Depo.

pg. 25). According to Plaintiff, this evidence shows that Ponder's actions were not objectively

reasonable, and Ponder is not entitled to qualified immunity.

"It is axiomatic that public officials whose positions entail the exercise of discretion enjoy

---

[2] Varley testified, however, that after reviewing the statement of the Stowe, the signature
of Freeman on receipt, and a copy of the check he would have probable cause to charge Freeman
with presumption of theft by check (Varley Depo. at pg. 40).

the special protections of a qualified immunity from personal liability in § 1983 damage actions." *Saldana v. Garza*, 684 F.2d 1159, 1162 (5th Cir. 1982).  The defendant bears the burden of pleading his good faith and establishing that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Id.* at 1163.  "Once a defendant has asserted the affirmative defense of qualified immunity and has established that any allegedly tortious conduct was undertaken pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this 'good faith' defense."  *Id.*, *quoting Garris v. Rowland*, 678 F.2d 1264, 1271 (5th Cir. 1982). The plaintiff must establish that a defendant's allegedly wrongful conduct violated clearly established law.  *Saldana*, 684 F.2d at 1163.  Stated differently, Plaintiff has the burden of proving that Deputy Ponder lacked good faith. *Id.* at 1163, n. 14.

The Court, having viewed the evidence in the light most favorable to Plaintiff, finds Deputy Ponder was performing discretionary duties in good faith within the course and scope of his duties. Ponder spoke with Plaintiff and told him he either had to bring the cows back or pay the money – he could not keep the cows without paying for them. Ponder never threatened criminal prosecution to collect a civil debt. (Exhibit 3 at pg. 3).  Ponder always investigated this as a criminal claim, and he simply informed Plaintiff of the options. (Exhibit 3 at pg. 3).  Based on the evidence, and the information possessed at the time of his actions, a reasonable public official could have believed that his actions in the investigation were proper.

Plaintiff has not met his burden of showing Ponder lacked good faith.  Ponder did not violate any constitutional or statutory rights of which a reasonable law enforcement officer would have known. Therefore, as a matter of law, Defendant Deputy Ponder is entitled to qualified immunity. This portion of Defendants' motion for summary judgment is granted.

**C.**     **Discussion on Plaintiff's civil conspiracy claim**

**1.**     **Elements**

Plaintiff also seeks to pursue the civil conspiracy claim against all Defendants. The elements

of a civil conspiracy include: (1) Defendant was a member of a combination of two or more persons;

(2) The object of the combination was to accomplish (a) an unlawful purpose; or (b) a lawful purpose

by unlawful means; (3) The members had a meeting of the minds on the object or course of action;

(4) One of the members committed an unlawful act, overt act to further the object or course of

action; and (5) Plaintiff suffered an injury as a proximate result of the wrongful act.  *Insurance Co.*

*of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).

**2.**     **Arguments**

Plaintiff relies on Ponder's testimony that Stowe, Ponder, Conway, Varley, and Spangler

were all in agreement (Ponder Depo. at pgs.42-43).  Ponder testified Varley made the decision to file

the criminal charges, and the Defendants all agreed to it (Ponder Depo. at pg. 44).  Stowe testified

his goal from the beginning was to get his money, and when he got the money, he decided not to

press charges.  (Stowe Depo. at pg. 29).

Plaintiff further asserts the object of the combination was to accomplish an unlawful purpose

or a lawful purpose by unlawful means.  Specifically, Plaintiff asserts Defendants agreed that

attempting to collect a civil debt with a threat of criminal prosecution is unlawful, and Defendants

further agreed that threatening someone with criminal prosecution for something that is not a crime

is unlawful. (Varley Depo. pg. 15). Again, according to Stowe, it was the goal from the beginning

to get paid. (Stowe Depo. pg. 29). Stowe was told that they would get his money, they got his money,

and that was the reason that he went to the Sheriff's office in the first place. (Stowe Depo. pg. 19).

Stowe testified that he thinks Varley was trying to get his money back for him. (Stowe Depo. pg. 20).

Regarding whether the members had a meeting of the minds, Plaintiff again relies on Ponder's testimony that all of the Defendants were in agreement.  (Ponder Depo. at pgs. 42-43). Regarding the next factor, whether one of the members committed an unlawful act to further the course of action, Plaintiff asserts Varley counseled Stowe on what was purely a civil matter. (Stowe Depo. pg. 18; Varley Depo. pgs. 69, 82-83). According to Plaintiff, Ponder and Varley agreed to charge Freeman with "presumption of theft by check." (Ponder Depo. pgs. 16, 34; Varley Depo. pgs. 55, 82), and as a result, the probable cause affidavit sworn to by Ponder was incorrect. (Varley Depo. pg. 37). A warrant was later issued. (Spangler Depo. pg. 24).

Plaintiff asserts Defendants and their expert agree that Freeman should not have been charged with any crime based upon what they heard. Plaintiff states that as a result of the agreement to recover Stowe's money, Varley and Ponder swore out a probable cause affidavit for something that was not a crime, and the affidavit resulted in the issuance of the warrant.  Thereafter, according to Plaintiff, Ponder told Freeman that he had a warrant and would be arrested if he did not pay the full amount. (Freeman Depo. pgs. 50, 81-82; Ponder Depo. pg. 28).  Finally, regarding the last element, Plaintiff asserts he suffered an injury as a proximate result of the wrongful act.  Specifically, Plaintiff states that as a result of the threat from Ponder based upon the parties' conspiracy, Freeman paid $215,080.00.

According to Defendants, the only agreement the Defendants had was that Freeman's actions of taking over $200,000 worth of cattle (into two different states), stopping payment on the check, and not returning them was a criminal act.  Defendants further assert a single legal entity, such as the Red River County and its officers/officials, is incapable of conspiring with itself. *See Moody v.*

*Jefferson Parish School Board,* 803 F.Supp. 1158, 1166 (E.D. La.1992), *aff'd,* 2 F.3d 604 (5th Cir.1993)(school board, principal, vice-principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity).  Defendant further contends Plaintiff fails to establish a *prima facie* case of civil conspiracy.

**3.     Discussion**

There is no independent liability for civil conspiracy. *Four Brothers Boat Works, Inc. v. Tesoro Petro. Co.,* 2006 WL 3589480, *10 (Tex. App. – Houston [14 Dist.] 2006).  Therefore, because a defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable, conspiracy is considered a derivative tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996).  An actionable conspiracy must consist of acts which would have been actionable against the conspirators individually. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex.1963).  Thus, to prevail on a civil conspiracy claim, the plaintiff must  show the defendant was liable for some underlying tort.

Plaintiff fails to do so as discussed previously herein.  Even if Plaintiff had established an underlying tort for which they could be liable, Plaintiff still fails to establish his *prima facie* case of conspiracy against the remaining Red River County Defendants, even assuming they are sued in their individual capacities.

With regard to the first element, Plaintiff refers to Ponder's deposition testimony for the proposition that all the "conspirators" were in "agreement." The evidence does not support Plaintiff's position. Likewise, Plaintiff cites Ponder's deposition for the proposition that the goal from the beginning was to get Stowe's money. Once again, however, the evidence does not support Plaintiff's position. Stowe never spoke with Chief Spangler about this matter. Stowe never spoke with Sheriff

31

Conway about this matter. Furthermore, Stowe did not work with Varley or Ponder to try to get his money back.

With regard to the second element, the object of the agreement was to accomplish an unlawful purpose or a lawful purpose with unlawful means, Plaintiff again fails to establish an essential element of his *prima facie* case. While Plaintiff cites to some agreement that collecting a civil debt with criminal prosecution was not proper, no one agreed that is what happened in this situation. The undisputed facts establish that the matter was always considered a criminal matter. Stowe did not consider Varley to be his attorney or to be giving him legal advise. Stowe had his own lawyer advising him, Jerry Atherton. The day Stowe chose to go to the Sheriff's Department about this incident he understood that the Sheriff's Department deals with and investigates criminal matters, which is the reason he went to the Sheriff's Department. He understood that by doing so he would be filing criminal charges. He did not agree to make any monetary payment or the exchange of any benefits to be able to pursue the criminal action against Freeman. If he did not get his cows back or get his money, he wanted Freeman arrested for theft.

Merely proving a joint "intent to engage in the conduct that resulted in the injury" is not sufficient to establish a cause of action for civil conspiracy. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995).  Rather, "civil conspiracy requires specific intent" to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Id.* Providing evidence of one conversation between the alleged conspirators regarding the acts at issue may give rise to suspicion, but it is not enough to create a genuine issue of material fact. *See Alford v. Thornburg*, 113 S.W.3d 575, 588 (Tex. App.- Texarkana 2003, no pet.).  To make a claim for civil conspiracy there must be "a preconceived plan and unity of design and purpose." *Goldstein v.*

*Mortenson*, 113 S.W.3d 769, 779 (Tex. App.- Austin 2003, no pet.).

Here, there is no evidence that all Defendants had a plan to use illegal means or lawful purpose by unlawful means to collect strictly a "civil debt."  Plaintiff also fails to establish the third element of a *prima facie* claim, that the "conspirators" have a "meeting of the minds" on the object or course of action. Again, Plaintiff relies on Ponder's deposition for the proposition that all the "conspirators" were in "agreement." The evidence does not support Plaintiff's position.

Similarly, Plaintiff's reliance on Ponder's deposition for the proposition that the goal from the beginning was to get Stowe's money does not support create a genuine issue of material fact on this element. Stowe never spoke with Chief Spangler about this matter. Stowe never spoke with Sheriff Conway about this matter. Furthermore, Stowe testified he did not work with Varley or Ponder to try to get his money back – "No, sir, I didn't do anything."  (Exhibit 11 at pgs. 22-23).

To establish the fourth element, Plaintiff states that Defendants and their expert agree that Freeman should not have been charged with *any* crime based on what they heard.  The evidence does not support this proposition. Even though the crime listed on the warrant may have needed to be amended, all agreed that Freeman's actions were criminal and could have constituted the crime of theft over $200,000 (as opposed to presumption of theft by check). The matter was always considered a criminal matter. Defendants' expert continually testified that Freeman's actions could be construed as criminal.

In addressing the fifth element of his *prima facie* case , whether he suffered an injury as a proximate result of the wrongful act, Plaintiff claims he was forced to repay the $215,080 when he did not return the cattle. Defendants assert they are unclear how that payment, which is what Plaintiff agreed to do and did in fact do initially, is the result or proximate cause of any "conspiracy."

The Court concludes Plaintiff fails to create a genuine issue of material fact on the essential elements of his civil conspiracy claim.  This portion of Defendants' motion for summary judgment is granted.

## IX.

## CONCLUSION

For the reasons contained here, the Court is of the opinion Defendants' motion for summary judgment should be granted.  The Court declines to award Defendants' fees and costs.  Based on the foregoing, it is

**ORDERED** that Defendants Red River County, Texas, Sheriff Jerry Conway, Chief Deputy Larry Spangler, Deputy Larry Ponder, and County Attorney Val Varley's Motion for Summary Judgment (Dkt. No. 46) is **GRANTED**.  It is further

**ORDERED** that Plaintiffs' claims against Defendants Red River County, Texas, Sheriff Jerry Conway, Chief Deputy Larry Spangler, Deputy Larry Ponder, and County Attorney Val Varley are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that Plaintiffs' Motion for Leave to File First Amended Original Complaint (Dkt. No. 69) is **DENIED AS MOOT**.

**SIGNED this 29th day of March, 2007.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE